**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

NEXSTAR MEDIA INC.,
545 East John Carpenter Freeway
Suite 700
Irving, TX 75062,

        Plaintiff,

v.

NEWSNATIONUSA.COM, an Internet
Domain Name,

and

JOHN DOES 1-9,

        Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT

Plaintiff Nexstar Media Inc. ("Nexstar"), by counsel, alleges as follows for its Verified Complaint against the Defendant NewsNationUSA.com (the "Defendant Domain Name") and Defendants John Doe 1-9 (the "Doe Defendants"), seeking, *inter alia*, the disabling of the Defendant Domain Name and the Internet websites operating at the domain names AmericanPressNews.com, DailyPostUSA.com, NewsExpressUS.com, NewsNationUSA.com, NYPressNews.com, RepublicanTimesUSA.com, TimesNewsExpress.com, USATribuneMedia.com, and WashingtonNewsPost.com, (collectively, the "Infringing Domain Names"), which infringe upon Plaintiff's goodwill and valuable trademarks and copyrights without authorization to operate a network of fraudulent news websites.

## NATURE OF THE SUIT

1.      This is an action against the Defendant Domain Name for *in rem* cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and against the Doe Defendants for trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114(1) and copyright infringement and unauthorized removal and alteration of copyright management information under the Copyright Act, 17 U.S.C. § 101, *et seq.*

2.      Nexstar is America's largest local television and media company, delivering local content and network programing to nearly 68% of U.S. television households.  Nexstar has the largest newsgathering organization in the country, with over 5,400 journalists in newsrooms throughout the United States providing content for Nexstar's television stations, websites, and mobile applications.  People throughout the U.S. have come to recognize Nexstar and its related brands as providing valuable and trustworthy news services.

3.      Nexstar's invaluable rights are being deliberately and willfully infringed through the Doe Defendants' operation of a network of fraudulent websites that display Nexstar's trademarks and copyrighted news articles, images, and/or videos (the "Copyrighted Works") without authorization to obtain revenue from "clicks" or purchases via third party vendors from Internet visitors, including those who are looking for Nexstar's legitimate news services.

## PARTIES

4.      Plaintiff Nexstar Media Inc. is a Delaware corporation having a principal address of 545 East John Carpenter Freeway, Suite 700, Irving, TX 75062.

5.      Defendant Domain Name NewsNationUSA.com is an Internet domain name which, according to records in the Whois database of domain name registrations, was registered

on November 26, 2020, by "WhoisGuard Protected". A copy of the domain name registration record for the Defendant Domain Name is attached as Exhibit A.

6. Defendants John Doe 1-9 are a person or persons of unknown identity who use the website at the Defendant Domain Name and the Infringing Domain Names to operate a network of websites displaying counterfeit versions of Nexstar's NEWS NATION trademarks (the "NEWS NATION Marks") and/or unauthorized copies of Nexstar's Copyrighted Works to attract Internet users to the Defendant Domain Name, the Infringing Domain Names, or other online locations, including related Twitter and Facebook accounts, for commercial gain.

## JURISDICTION, VENUE, AND JOINDER

7. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114(1), and copyright infringement and unauthorized removal and alteration of copyright management information under the Copyright Act, 17 U.S.C. § 101 *et seq*.

8. This Court has subject matter jurisdiction over this Complaint pursuant to 15 U.S.C. § 1121(a), 17 U.S.C. § 501(b), and 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has *in rem* jurisdiction over the Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A). *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(i)(I) because the listed registrant of the Defendant Domain Name is a privacy service and Nexstar cannot find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

10. Pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(II)(aa), Nexstar will give notice of the violations of its rights and intent to proceed *in rem*, to the postal and e-mail address set forth in

the registration record for the Defendant Domain Name.

11.     The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(3) and (4), states that the *in rem* action, jurisdiction, and remedies created by the statute are "in addition to any other civil action or remedy otherwise applicable" and "in addition to any other jurisdiction that otherwise exists, whether in rem or in personam."

12.     This Court has personal jurisdiction over the Doe Defendants because Nexstar's claims against John Doe 1-9 for trademark infringement, trademark counterfeiting, copyright infringement, and unauthorized removal and alteration of copyright management information are based on the Doe Defendants' purposeful availment of the privilege of conducting business in this District and the Doe Defendants' activities directed at this District.  Specifically, Nexstar bases its claims against the Doe Defendants on the Doe Defendants' misuse of Nexstar's trademarks and/or copyrighted works to operate the Defendant Domain Name and the Infringing Domain Names, which are made available to and accessed by residents of this District, and, on information and belief, the Doe Defendants' use of instrumentalities in this District, to maintain, host, and/or display the websites located at the Defendant Domain Name and the Infringing Domain Names bearing Plaintiff's intellectual property.

13.     Alternatively, this Court has personal jurisdiction under Fed. R. Civ. P. 4(k)(2) because Nexstar's claims against the Doe Defendants are based on the Doe Defendants' extensive contacts with the United States as a whole, which include providing news content specifically targeting users in the United States and this District, including advertisements directed to persons in the United States including this District, and engaging in transactions involving domain names such as the Defendant Domain Name that are registered by U.S.-based domain name registries and registrars.

14.     Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) and 28 U.S.C. § 1391(b)(2) in that the .com domain name registry operator, VeriSign Inc., is located in this District and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

15.     Joinder of the Doe Defendants and the Defendant Domain Name is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendants.

<u>**NEXSTAR'S RIGHTS**</u>

16.     Nexstar is a leading diversified media company that leverages localism to bring new services and value to consumers and advertisers through its traditional media, digital, and mobile media platforms.

17.     Nexstar operates, programs, or provides sales and other services to 199 television stations and related digital multicast signals reaching 116 markets in 39 states and the District of Columbia—equal to approximately 68% of all U.S. television households.  Nexstar provides service to the Washington, D.C. market (which includes Northern Virginia) on stations WDCW(TV) and WDVM-TV, to the Richmond, Virginia market on station WRIC-TV, and to the Norfolk, Virginia market on stations WAVY-TV and WVBT(TV).

18.     The stations operated by Nexstar are affiliates of major television networks including ABC, NBC, FOX, CBS, and The CW.

19.     On January 15, 2020, Nexstar announced that it would launch a live, daily three-hour national newscast entitled NewsNation on the cable network then known as WGN America.

20.     In addition to the nightly newscast, Nexstar also announced that it would deliver news twenty-four hours a day online through NewsNation's digital properties, including a

website at www.NewsNationNow.com (which Nexstar registered on January 2, 2020) and a free mobile app.

21.     Nexstar invested over $20 million and hired more than 150 people for the newscast, which debuted on September 1, 2020.

22.     Nexstar's launch of NewsNation received widespread coverage in mainstream and television trade publications, including the *Los Angeles Times*, *The Wall Street Journal*, *Variety*, and *Deadline*.  Almost 150,000 viewers tuned into NewsNation's debut newscast at its peak.

23.     In early 2021, Nexstar announced plans to expand the NewsNation service and brand.  In March 2021, Nexstar relaunched WGN America as a standalone NewsNation-branded channel.  The rebranding under the NewsNation name sought to underscore the network's clearly defined mission of delivering fact-based and unbiased news.

24.     Currently, NewsNation reaches 75 million television households.  NewsNation also live streams on major streaming platforms, such as YouTubeTV, Hulu, and fuboTV.

25.     Nexstar presents a variety of news programming on NewsNation, including *NewsNation Rush Hour*, *The Donlon Report*, *Banfield*, *NewsNation Prime* (the nation's only live prime-time national newscast), and *On Balance with Leland Vittert*.  In July 2021, NewsNation announced it would be adding 26 hours of news, analysis, and talk to the network's weekly schedule, including *Dan Abrams Live*, produced and hosted by veteran journalist and analyst Dan Abrams, and *Morning in America*, a live national three-hour weekday morning news show hosted by award-winning news correspondent and anchor, Adrienne Bankert.

26.     In addition to its cable news programming, NewsNation also delivers news twenty-four hours a day online through NewsNation's digital properties, including a website at

www.NewsNationNow.com, the NewsNation mobile app, and a strong social media presence on platforms including Facebook, Twitter, and Instagram.

27.    Nexstar also promotes its NewsNation products and services throughout the United States under its NEWS NATION Marks.  This includes Nexstar's use of the NEWS NATION Marks in its domain name www.NewsNationNow.com, as well as Nexstar's use of the NEWS NATION Marks throughout its website and mobile app in association with the NEWS NATION brand.

28.    Nexstar uses the NEWS NATION Marks to indicate the source of its high-quality news and information related products and services, and viewers have come to distinguish Nexstar's goods and services as a result of the use and widespread promotion of the NEWS NATION Marks.

29.    The NEWS NATION Marks are entitled to common law trademark rights.

30.    The NEWS NATION Marks are famous and/or distinctive throughout the United States in connection with Plaintiff's products.

31.    The NEWS NATION Marks are registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under U.S. Reg. Nos. 6075134 and 6284477.

32.    A true and correct copy of U.S. trademark registrations owned by Nexstar for the NEWS NATION Marks are attached hereto as Exhibit B.

33.    Plaintiff's federal registration for the NEWS NATION Marks is *prima facie* evidence of the validity of the marks, of Nexstar's ownership of the marks, and of Nexstar's exclusive right to use the marks in U.S. commerce.

34.    In addition to Plaintiff's national news services, Plaintiff offers a wide array of local news services in 116 television markets throughout the United States, including three

markets within this District.  Plaintiff operates 120 local websites and 284 local mobile apps, reaching 68% of U.S. households.

35.     Nexstar's 5,400 journalists are responsible for producing over 270,000 hours of local programming each year and online content that is viewed by more than 91 million average users each month.

36.     Nexstar is the owner of numerous registered and common law trademarks associated with its local news stations, including U.S. Registration Nos. 3767261 for WHTM, 2332286 for WFRV, 2176978 for WCMH, 1943000 for WKRG, 1718810 for KELO, 1542932 for WCBD, 1436725 for KRON, 1754228 for WFLA-TV, 5410395 for YOUR LOCAL WEATHER AUTHORITY, 5482968 for BUFFALO'S BEST, 5720026 for WESTERN NEW YORK'S NEWS LEADER, and 6256167 for LOCAL NEWS THAT MATTERS (the "Station Marks").

37.     Nexstar has invested vast resources, including time, effort, talent, creativity and money to not only provide its viewers and readers high-quality and local news reporting, but also produce articles and news stories that are original to Nexstar and that constitute copyrightable subject matter under the laws of the United States.

38.     Each Nexstar article is separately written, edited, and published and constitutes a separate literary work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

39.     The Copyrighted Works include numerous news articles, whose copyrights are owned or exclusively controlled by Nexstar, including but not limited to, those works listed in Exhibit C.  The federal copyright registration certificates for each of these works are attached

hereto as Exhibit D.  Among the Copyrighted Works are the following:

- An article from KHON titled *This College is Offering the First Cannabis Chemistry Scholarship*;

- Articles from WGN titled *Health Officials Report 1,442 New Cases of COVID-19 in Illinois and 33 Deaths*, *First Doses of One-Shot Johnson & Johnson Vaccine Administered at New Site in Des Plaines, Kansas Football Coach Les Miles Placed on Leave Amid Misconduct Allegations at LSU,* and *Step Into the Marvel Universe at New MSI Exhibit*;

- An article from WDVM titled *Montgomery County Mother Charged with Attempted Murder Of 3-Year-Old Daughter*; and

- An article from WPIX titled *Former NYC Medical Examiner Employees Arrested for Stealing Credit Cards of Deceased, Charging Thousands in Purchases*.

40.     The Copyrighted Works—which feature the unique commentary and reporting by Nexstar employees—are creative expressions of news events that were the product of editorial discretion and substantial journalistic skills, resources, and creative energies.

41.     Nexstar's news and content are distributed via Nexstar's websites, including 120 local station websites.  These articles are also available to consumers via the NewsNationApp and over 284 local news and weather mobile apps.

42.     The Copyrighted Works are also of great value to Nexstar and are read daily by thousands of viewers.  For example, one of the Copyrighted Works received over 81,000 views/clicks.

43.     From these articles, Nexstar derives revenue from advertisers that pay Nexstar a fee to display advertisements alongside Nexstar's online articles.  The revenue from advertisers

is determined, in part, based on the views of Nexstar's articles.

44.     Nexstar is, and at all times material herein was, the sole owner and proprietor of all right, title, and interest in and to the copyrights in the Copyrighted Works.

## DEFENDANTS' UNLAWFUL ACTS

45.     The Doe Defendants operate a network of fraudulent websites, via the Defendant Domain Name, the Infringing Domain Names, and several social media platforms, that by design, improperly use Nexstar's intellectual property to imitate the legitimate NewsNation website and/or legitimate Nexstar news articles in order to generate revenue via pay-per click advertisements and referral fees from sales of third-party goods and/or services promoted on the fraudulent websites.

46.     The Defendant Domain Name NewsNationUSA.com was registered on November 26, 2020 through the domain name registrar Namecheap, Inc. using a name that is hidden by a proxy service and, on information and belief, is an alias used by the Doe Defendants.

47.     The Defendant Domain Name merely consists of the NEWS NATION Marks with "usa" appended to the end of the marks.

48.     After registration, the Defendant Domain Name was configured to display counterfeit versions of the NEWS NATION Marks in association with websites providing fraudulent news and entertainment services for commercial gain via pay-per click advertisements and the sale of products and/or services via third-party sites. Specifically, the website displayed at the Defendant Domain Name includes a banner that resembles the NEWS NATION Marks and news articles—including articles stolen directly from Nexstar's legitimate websites—that place NewsNationUSA.com in direct competition for site visits with Nexstar's legitimate websites.

49.   On information and belief, the Defendant Domain Name is owned and/or operated by the Doe Defendants.

50.   Following are two representative screen captures of the website displaying counterfeit versions of the NEWSNATION Marks at the Defendant Domain Name:

newsnationusa.com:



newsnationusa.com/store:



51.   The screen captures shown above contain the NEWS NATION Marks of U.S. Reg. Nos. 6075134 and 6284477, on a website with a look and feel that is nearly identical to Nexstar's legitimate website at newsnationnow.com, as depicted below:



52.     The Doe Defendants have also set up Twitter and Facebook accounts in an attempt to promote, lend legitimacy to, and drive traffic to the fraudulent website. Representative screen captures of these fraudulent social media accounts are included below:

<u>Doe Defendants' Twitter Account</u>:



Doe Defendants' Facebook Account:



53.     The screen captures above, like the screen captures of the Defendant Domain Name, contain the NEWS NATION Marks of U.S. Reg. Nos. 6075134 and 6284477 with a look and feel that is nearly identical to Nexstar's legitimate accounts, as depicted below:

NewsNation Twitter Account:



NewsNation Facebook Account:



54.    The Defendant Domain Name does not reflect the intellectual property rights or legal name of the registrant of the Defendant Domain Name.

55.    On information and belief, the Doe Defendants are using the counterfeit NEWS NATION Marks on the fraudulent site displayed at the Defendant Domain Name to promote and sell products, including to residents located in this District, and earn revenue from pay-per click advertisements and referral fees from third-party vendors.

56.    The Defendant Domain Name also displays Nexstar's Copyrighted Works without authorization.  A representative screenshot of a legitimate Nexstar article and an unauthorized copy posted on the Defendant Domain Name is provided below:

14



57. The screen capture shown above contains Nexstar's Copyrighted Work covered by U.S. Reg. No. TX0008971581.

58. As shown above, the Doe Defendants have copied the highlighted text verbatim from Nexstar's Copyrighted Work displayed on the Defendant Domain Name.

59.     The Doe Defendants have also removed the copyright management information—*e.g.*, any reference to Nexstar's copyright and/or the authorship associated with the articles—for each unauthorized Copyrighted Work displayed on the Defendant Domain Name.  Furthermore, Nexstar's copyright management information has been replaced with the Doe Defendants' fraudulent copyright management information and fake authors and distributed as the Doe Defendants' own original work.  In fact, the Defendant Domain Name does not appear to include any discussion or reference to Nexstar aside from the unauthorized use of Nexstar's intellectual property.

60.     On information and belief, the Doe Defendants have also set up the Infringing Domain Names in a similar fashion.  The Infringing Domain Names copy the names of other notable news brands and are also displaying *inter alia* Nexstar's Copyrighted Works without Nexstar's authorization in order to profit from consumers via pay-per click advertisements and the sale of products and/or services via third-party sites.

61.     Nexstar has identified eight similar domain names -- WashingtonNewsPost.com, TimesNewsExpress.com, NYPressNews.com, AmericanPressNews.com, DailyPostUSA.com, NewsExpressUS.com, RepublicanTimesUSA.com, and USATribuneMedia.com -- all registered with the same registrar (Namecheap, Inc.), using the same name servers (ns.cloudflare.com), concealing the true registrant's identity with the same privacy service (WhoisGuard Inc.), and resolving to similar news websites that describe themselves using the *exact* same broken English as "one of the trusted online newspaper which is continuously keeping all their reader updated with the latest, trending and breaking news of the US and World."

62.     Each of the Infringing Domain Names is displaying Nexstar's Copyrighted Works, without Nexstar's authorization to promote and sell products, including to residents

located in this District, and earn revenue from pay-per click and/or pay-per-view advertisements and referral fees from third-party vendors.

63.    A representative sample of the many Nexstar Works at issue and the corresponding infringing articles posted on the Infringing Domain Names by the Doe Defendants are attached as Exhibit E and include the following examples:





Legitimate Nexstar Article:

Infringing Domain Name Article:





Legitimate Nexstar Article:

Infringing Domain Name Article:



64. The screen captures shown above contain Nexstar's Copyrighted Works covered by U.S. Reg. Nos. TX0008972616, TX0008972318, and TX0008971471.

65. Like the articles displayed on the Defendant Domain Name, the Doe Defendants have removed the copyright management information for each unauthorized Copyrighted Work displayed at the Infringing Domain Names and replaced it with their own fraudulent copyright management information and fake author names.

66. The Doe Defendants' display of unauthorized copies of Nexstar's Copyrighted Works at the Defendant Domain Name and Infringing Domain Names is in violation of Nexstar's exclusive right to produce, display, and distribute its creative products in contravention of its copyrights in the Copyrighted Works. The Doe Defendants also free ride on the expense and effort Nexstar has invested in producing its premium news reporting.

67. The Doe Defendants' infringement has been deliberate and willful in that the Doe Defendants know or should know that the Defendant Domain Name and the Infringing Domain Names infringe on Nexstar's rights by, among other things, removing Nexstar's copyright management information and copying material from Nexstar's Copyrighted Works into articles that the Doe Defendants pass off as their own.

68. The Doe Defendants' willful infringement robs Nexstar of its rights—*i.e.*, the Doe Defendants' verbatim copying of Nexstar's Copyrighted Works and the NEWS NATION Marks without consent, (1) allows the Doe Defendants to profit commercially from the Defendant Domain Name and the Infringing Domain Names and (2) substantially diminishes the value of the Copyrighted Works and the NEWS NATION Marks. Thus, Nexstar continues to be harmed by the Doe Defendants' conduct.

69.     Moreover, by interfering with Nexstar's ability to control the quality and distribution of its reporting, the Doe Defendants' acts significantly harm Nexstar's reputation and goodwill.

70.     Upon information and belief, unless enjoined by this Court, the Doe Defendants intend to continue to infringe upon Nexstar's trademarks and copyrights in order to reap illicit profits.

71.     Accordingly, Nexstar has suffered irreparable damages.  Nexstar has no adequate remedy at law to redress all of the injuries that the Doe Defendants have caused and intend to cause by their conduct.  Nexstar will continue to suffer irreparable harm until the Doe Defendants' actions alleged above are enjoined by this Court.

## <u>COUNT ONE:</u>
### (Violation of the Federal Anti-Cybersquatting Consumer Protection Act)

72.     Nexstar repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

73.     Nexstar's federally registered NEWS NATION Marks are famous and/or distinctive and were famous and/or distinctive prior to the registration of the Defendant Domain Name.

74.     The Defendant Domain Name fully incorporates the NEWS NATION Marks and/or confusingly similar variations thereof.

75.     The use of the NEWS NATION Marks within the Defendant Domain Name is without authorization from Nexstar.

76.     The Defendant Domain Name does not and cannot reflect the legal name of the registrant of the Domain Name.

77.     The registrant of the Defendant Domain Name has not engaged in bona fide

noncommercial or fair use of the NEWS NATION Marks in a website accessible under the Domain Name.

78.     The website displayed by the registrant of the Defendant Domain Name is likely to be confused with the goods and services that Nexstar offers under its NEWS NATION Marks, including Nexstar's legitimate online location at www.NewsNationNow.com.

79.     Upon information and belief, the registrant of the Defendant Domain Name registered the Domain Name with intent to divert consumers seeking to access genuine NEWS NATION services online away from Nexstar's online location at www.NewsNationNow.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Defendant Domain Name and the site displayed through use of the Defendant Domain Name.

80.     The services provided and the goods offered for sale via the Defendant Domain Name are promoted through a fraudulent website, bearing counterfeit NEWS NATION marks, and designed to mislead the public that the products are endorsed by Nexstar.

81.     Upon information and belief, the registrant of the Defendant Domain Name provided material and misleading false contact information when applying for and maintaining the registration of the Defendant Domain Name, in that the person or entity identified as the registrant of the Defendant Domain Name is concealing their identity from the public Whois records for the Defendant Domain Name.

82.     Nexstar, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

83.     The aforesaid acts by the registrant of the Defendant Domain Name constitute registration, maintenance, or use of a domain name that is confusingly similar to Nexstar's

NEWS NATION Marks, with bad faith intent to profit therefrom.

84.     The aforesaid acts by the registrant of the Defendant Domain Name constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

85.     The aforesaid acts have caused, and are causing, great and irreparable harm to Nexstar and the public.  The harm to Nexstar includes harm to the value and goodwill associated with the NEWS NATION Marks that money cannot compensate.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

86.     Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Nexstar is entitled to an order transferring the Defendant Domain Name to Nexstar.

<u>COUNT TWO:</u>
**(Trademark Counterfeiting)**

87.     Nexstar repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

88.     The Doe Defendants are intentionally and knowingly using counterfeit versions of the NEWS NATION Marks and the Station Marks in connection with the Defendant Domain Name and the Infringing Domain Names that are being used for the sale, offering for sale and/or distribution of counterfeit goods and/or services.

89.     The Doe Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the NEWS NATION Marks and the Station Marks on goods and/or services covered by the federal registrations for such marks including, for example, a fraudulent website designed to replicate Nexstar's legitimate news and entertainment websites.

90.     The Doe Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and

distribution of goods and/or services via the Defendant Domain Name.

91.     The Doe Defendants' use of the counterfeit NEWS NATION Marks and Station Marks on fraudulent websites to advertise, promote, offer for sale, distribute and sell goods and/or services was, and is, without the consent of Nexstar.

92.     The Doe Defendants' unauthorized use of the counterfeit NEWS NATION Marks and Station Marks on fraudulent websites in connection with advertisement, promotion, sale, offering for sale and distribution of goods and/or services constitutes use of the NEWS NATION Marks and the Station Marks in commerce.

93.     The Doe Defendants' unauthorized use of the NEWS NATION Marks and the Station Marks as set forth above is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the products and/or services sold by the Doe Defendants are authorized, sponsored or approved by Nexstar or that the Doe Defendants are affiliated, connected or associated with or in some way related to Nexstar; and (c) result in the Doe Defendants unfairly benefiting from Nexstar's advertising and promotion and profiting from the reputation of Nexstar, the NewsNation brand, the NEWS NATION Marks and Station Marks, all to the substantial and irreparable injury of the public and Nexstar.

94.     The Doe Defendants' aforesaid acts constitute willful trademark counterfeiting in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. § 1114 and 1116(d)(1).

95.     The aforesaid acts have caused, and are causing, great and irreparable harm to Nexstar and the public.  The harm to Nexstar includes harm to the value and goodwill associated with the NEWS NATION Marks and the Station Marks that money cannot compensate.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## COUNT THREE:
### (Trademark Infringement)

96.     Nexstar repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

97.     The Doe Defendants are using the NEWS NATION Marks and the Station Marks in commerce and have no valid rights in the NEWS NATION Marks or the Station Marks.

98.     The Doe Defendants have actual and/or constructive notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Nexstar's superior rights in its NEWS NATION Marks and its Station Marks by reason of the existence of Nexstar's aforementioned federal trademark rights.

99.     Use of the NEWS NATION Marks and the Station Marks by the Doe Defendants is without the permission or authorization of Nexstar.

100.    The aforesaid acts by the Doe Defendants have caused and/or are likely to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that the products advertised and sold by the Doe Defendants are those of, are sponsored or approved by, or are in some way connected with Nexstar.

101.    The aforesaid acts by the Doe Defendants constitute direct infringement of Nexstar's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

102.    The aforesaid acts have caused, and are causing, great and irreparable harm to Nexstar and the public.  The harm to Nexstar includes harm to the value and goodwill associated with the NEWS NATION Marks and the Station Marks that money cannot compensate.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

**COUNT FOUR:**
**(Copyright Infringement)**

103.    Nexstar repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

104.    Nexstar is the author and owner of the Copyrighted Works consisting of creative and original expressions.

105.    Each Copyrighted Work is an original audio visual and/or literary work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.  Each such Copyrighted Work has been or will be registered with the United States Copyright Office or is the subject of an application for registration filed with the Copyright Office.  Representative examples of the copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408(f) & 411, and implementing Copyright Office regulations, corresponding to the Copyrighted Works identified in Exhibit C, also are attached as part of Exhibit D.

106.    Nexstar owns the exclusive right to, among other things, reproduce and distribute its Copyrighted Works.

107.    Nexstar has not authorized the Doe Defendants to publicly display, reproduce, or distribute its Copyrighted Works.

108.    At all times relevant hereto, Nexstar has been and still is the owner and proprietor of all right, title, and interest in and to the Copyrighted Works.

109.    The Doe Defendants have infringed and continue to infringe on Nexstar's Copyrighted Works by violating Nexstar's exclusive rights to publicly display, distribute, and reproduce the Copyrighted Works.  Without Nexstar's authorization, the Doe Defendants are

publicly displaying, copying, distributing, altering, and/or displaying the Copyrighted Works through the Defendant Domain Name and the Infringing Domain Names.

110.    Such copying, distributing, altering, and/or displaying the Copyrighted Works was done by the Doe Defendants without the consent, approval, or license of Nexstar.

111.    The Doe Defendants' acts of infringement are willful, in disregard of, and with indifference to Nexstar's rights.

112.    As a direct and proximate result of the infringements by the Doe Defendants, Nexstar is entitled to damages and the Doe Defendants' profits in amounts to be proven at trial.

113.    Alternatively, at its election, Nexstar is entitled to statutory damages, up to the maximum of $150,000 per infringed work by virtue of the Doe Defendants' willful infringement, or for such other amounts as may be proper under Section 504 of the Copyright Act, 17 U.S.C. §504.

114.    Nexstar is further entitled to recover its attorneys' fees and full costs pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505.

## COUNT FIVE:
### (Unauthorized Removal and Alteration of Copyright Management Information)

115.    Nexstar repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

116.    Nexstar is the author and owner of the Copyrighted Works consisting of creative and original expressions.

117.    At all times relevant hereto, Nexstar has been and still is the owner and proprietor of all right, title, and interest in and to the Copyrighted Works.

118.    The Copyrighted Works contain creative material wholly original to Nexstar and are copyrightable subject matter under the copyright laws of the United States.

119.     In displaying Nexstar's Copyrighted Works on the Defendant Domain Name and the Infringing Domain Names, the Doe Defendants have repeatedly removed and altered copyright management information from the Nexstar's Copyrighted Works by *inter alia* removing the names of the authors and the bottom of the articles displaying Nexstar's identifying information and replacing it with the Doe Defendants' own information when copying, distributing, and/or displaying Nexstar's Copyrighted Works.

120.     Upon information and belief, the Doe Defendants distributed Nexstar's Copyrighted Works knowing that copyright management information had been removed from the works without authority of Nexstar.

121.     Upon information and belief, the Doe Defendants knew or had reasonable grounds to know that removing the copyright management information from Nexstar's Copyrighted Works or distributing the Copyrighted Works knowing that copyright information had been removed would induce, enable, facilitate, or conceal an infringement of Nexstar's rights in Nexstar's Copyrighted Works.

122.     The above acts by the Doe Defendants constitute removal or alteration of copyright management information under Section 1202 of the Copyright Act, 17 U.S.C. § 1202.

123.     The aforesaid acts have caused, and are causing, great and irreparable harm to Nexstar by dissociating Nexstar's Copyrighted Works from Nexstar's copyright management information.

## **PRAYER FOR RELIEF**

WHEREFORE, Nexstar respectfully requests of this Court:

1.     That judgment be entered in favor of Nexstar on its claims of cybersquatting, trademark counterfeiting and infringement, copyright infringement, and unauthorized removal

and alteration of copyright management information;

2.     That the Court order the Defendant Domain Name be transferred to Nexstar through transfer by VeriSign, Inc. of the Defendant Domain Name by changing the registrar of record for the Defendant Domain Name to Nexstar's domain name registrar of choice, CSC Corporate Domains, Inc., and by such registrar's change of the registrant to Nexstar;

3.     That any other domain names registered by the registrant of the Defendant Domain Name that resemble or include the NEWS NATION Marks be transferred to Nexstar;

4.     That the Doe Defendants be required to pay Nexstar statutory damages pursuant to 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c);

5.     That actual, compensatory, and statutory damages, be awarded against the Doe Defendants;

6.     That the Doe Defendants be required to disgorge all revenues earned from the operation of fraudulent websites containing counterfeit NEWS NATION Marks and Nexstar's Copyrighted Works;

7.     That the Court permanently enjoin the Doe Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them, jointly and severally, from:

a.     Copying distributing, altering, displaying, hosting, selling and/or promoting Nexstar's Copyrighted Works;

b.     Using any copy or colorable imitation of the NEWS NATION Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product in any way to Nexstar, or to any goods sold,

manufactured, sponsored, approved by, or connected with Nexstar;

c.      Using Facebook, Twitter, or other social media platforms to copy, distribute, alter, display, host, sell, and/or promote the NEWS NATION Marks or Nexstar's Copyrighted Works; and

d.      Engaging in any other activity constituting unfair competition with Nexstar, or constituting an infringement of the NEWS NATION Marks or Nexstar's Copyrighted Works, or constituting any damage to Nexstar's name, reputation, or goodwill.

8.      That those in active concert or participation with the Doe Defendants and those with notice of the injunction, including without limitation any Internet search engines, web hosting and Internet service providers, social media service providers, domain name registrars, and domain name registries, cease and desist facilitating access to any or all domain names and websites or accounts through which the Doe Defendants engage in unlawful access to, use, reproduction, and distribution of the NEWS NATION Marks and Nexstar's Copyrighted Works;

9.      That the domain name registries and registrars for the Infringing Domain names operated by the Doe Defendants, and any other domain names or websites used by the Doe Defendants to copy, distribute, alter, display, host, sell, and/or promote Nexstar's Copyrighted Works and the NEWS NATION Marks, or their administrators, place the domain names on registry Hold/serverHold or such other status to render the names/sites non-resolving;

10.     That the Court order an award of costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(c) or as otherwise permitted by law, incurred by Nexstar in connection with this action;

11.     That Nexstar be awarded pre-judgment interest and post-judgment interest on the above damages awards; and

12.    That the Court order an award to Nexstar of such other and further relief as the Court may deem just and proper.

Dated: September 13, 2021          By:    /s/ Attison L. Barnes, III
                                          Attison L. Barnes, III (VA Bar No. 30458)
                                          Ari S. Meltzer (for *pro hac vice*)
                                          Spencer C. Brooks (for *pro hac vice*)
                                          WILEY REIN LLP
                                          1776 K St. NW
                                          Washington, DC 20006
                                          (202) 719-7000 (phone)
                                          abarnes@wiley.law

                                          *Counsel for Plaintiff*
                                          *NexstarMedia Inc.*

## **VERIFICATION**

I, Elizabeth Ryder, Executive Vice President and General Counsel, of Nexstar Media Inc., declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the facts contained in the foregoing Verified Complaint are true and correct.

_____
Elizabeth Ryder


September 13, 2021
_____
Date